IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT M. WALLETT,<br><br>    **Plaintiff**<br><br>v.<br><br>**PENNSYLVANIA TURNPIKE COMMISSION; JOSEPH G. BRIMMEIER; and GEORGE M. HATALOWICH,**<br><br>    **Defendants** | Civ. No. 1:10-CV-2092<br><br><br><br><br><br>**Judge Sylvia H. Rambo** |

## **M E M O R A N D U M**

In this political patronage case asserted pursuant to the provisions of 42 U.S.C. § 1983 and the First Amendment, Plaintiff sued his former employer, the Pennsylvania Turnpike Commission, and two of its former executives, alleging that his demotion and subsequent termination was a result of his refusal to participate in their "pay-to-play" scheme. This court previously entered judgment in favor of Defendants, and the Third Circuit Court of Appeals affirmed the same. Presently pending before the court is Plaintiff's motion for relief from judgment (Doc. 63), which he filed following the 33rd Statewide Grand Jury's recommendation that charges be levied against the two individual defendants for their actions in connection with the alleged pay-to-play scheme underlying Plaintiff's Section 1983 action. The instant motion requires the court to decide whether the Grand Jury's presentment and preliminary hearing testimony of three witnesses is newly discovered evidence impacting the court's prior holding that Plaintiff failed to set forth any evidence tending to establish Defendants knew that, by refusing to participate in their pay-to-play scheme, Plaintiff did not support their administration. For the following reasons, the motion for relief from judgment will be denied.

I.       **Background**

Because the court writes primarily for the parties, and because the facts alleged in the complaint have already been summarized by both this court, *Wallett v. Pa. Tpk. Comm'n*, Civ. No. 10-CV-2092, 2012 WL 3579575 (M.D. Pa. Aug. 17, 2012) ("*Wallett I*"), and the Third Circuit, *Wallett v. Pa. Tpk. Comm'n*, No. 12-3491, 2013 WL 2382608 (3d Cir. May 30, 2013) ("*Wallett II*"), the court will outline only the facts essential to this memorandum.

   A.    **Facts**

During a Republican administration, Plaintiff, Robert M. Wallett, was hired as an at-will employee to the position of Director of Maintenance for the Pennsylvania Turnpike Commission ("Commission"). Several years later, the newly-elected Democrat Governor Edward Rendell appointed Defendant Joseph Brimmeier ("Defendant Brimmeier") as the Chief Executive Officer of the Commission.

Several months following his appointment, Defendant Brimmeier demoted Plaintiff to Director of Facilities. In his role as Director of Facilities, Plaintiff participated in the selection process for outside contractors, which included his recommending entities that had submitted a letter of interest for work contracted through the Commission. The Technical Review Committee ("TRC"), which was a committee of Commission employees who provided recommendations to the Pennsylvania Turnpike Commissioners for all outside engineering contracts, consisted of several individuals, including Defendant Brimmeier and Chief Operating Officer George Hatalowich ("Defendant Hatalowich"). Pertinent to his lawsuit, Plaintiff alleged that Defendant Brimmeier and Defendant Hatalowich

2

(collectively "Defendants") improperly influenced members of the TRC to recommend the professional services contracts be awarded to politically connected entities that made political contributions.

Plaintiff's employment was terminated in May 2009, when Defendant Brimmeier eliminated the position of Director of Facilities. Shortly thereafter, Plaintiff interviewed for the newly created position of Manager of Facilities and Energy Management Operations. A panel of Commission employees, including Defendant Hatalowich, ultimately hired another individual, who had qualifications similar to those of Plaintiff, for the position.

### B. Plaintiff's Lawsuit and Appeal Thereof

The basis of Plaintiff's Section 1983 lawsuit centered on his allegation that he was terminated from employment, and subsequently not hired for the newly created position, due to Defendants' knowledge that he refused to participate in the pay-to-play scheme. However, Plaintiff was unable to present evidence substantiating his claims, and after the period for discovery had concluded, the court granted Defendants' motion for summary judgment due to Plaintiff's inability to demonstrate more than a scintilla of evidence that Defendants were aware both of Plaintiff's failure to participate in the alleged pay-to-play scheme and Plaintiff's lack of support for Defendants' administration. In so holding, the court highlighted that the record lacked evidence tending to suggest "Defendants were actually aware of Plaintiff's political affiliation or that they made any employment actions based on their desire that Plaintiff participate either more or less in any political processes," *Wallett I*, 2012 WL 3579575 at *6, and emphasized Plaintiff's failure to establish

3

that Defendants "were even aware of his political leanings," *Id.* at *7. Because of Plaintiff's failure, the court granted judgment in favor of Defendants.

Plaintiff unsuccessfully appealed the court's decision. In affirming this court's grant of summary judgment in favor of Defendants, the Third Circuit similarly determined that "the evidence in the record does not support [Plaintiff]'s assertion that Defendants were aware of his failure to support their alleged pay-to-play scheme." *Wallett II*, 2013 WL 2382608, *2. The Third Circuit framed the central issue as "whether Defendants knew that, by refusing to participate in their pay-to-play scheme, [Plaintiff] did not support their administration," *Id.*, and held that "[t]he inferences that may be drawn by [Plaintiff], even when read in the light most favorable to him, do not sustain the conclusion that Defendants were aware of [Plaintiff]'s supposed lack of support for them," *Id.* at *3. Accordingly, the Third Circuit affirmed the entry of summary judgment. (Doc. 62.)

### C. **The Instant Motion**

The basis of the instant motion relates to the 33rd Statewide Grand Jury's factual presentment that recommends criminal charges be filed against several individuals, including Defendants, due to their "orchestrating a massive 'pay to play' scheme involving jobs and state contracts." (Doc. 64, p. 2 of 15.) The 85-page presentment, which the court has reviewed in its entirety, outlines the Grand Jury's findings related to the existence of the pay-to-play scheme, and sets forth its conclusions that there exists a prima facie case that both Defendants engaged in conflicts of interest and other improper actions in their selection of "preferred Turnpike firms," whereby Defendants exerted influence over the TRC's selection process in order to award public contracts to those firms that made significant

4

political contributions or otherwise provided Defendants with lavish gifts. (*See generally* Doc. 64-1.) In short, the presentment clearly set forth the Grand Jury's finding that Defendants were key players in the pay-to-play scheme. (*Id.*) However, the Grand Jury did not make any finding related to whether Defendants knew of Plaintiff's refusal to participate in the alleged pay-to-play scheme or Plaintiff's lack of support for Defendant's administration. (*See id.*)

**II.         Legal Standard**

In support of his motion for relief from judgment, Plaintiff argues that the Grand Jury's presentment and preliminary hearing testimony of Anthony LePore, the Chief of Staff for the Democratic Caucus, Carmen Marrone, the Eastern Director of Operations and Projects for the Pennsylvania Turnpike Commission, and Lisa Smith, the Executive Secretary for the Pennsylvania Turnpike Commission, is newly discovered evidence and demonstrate that Defendant Brimmeier's deposition testimony contained material misrepresentations. (*See* Doc. 64, p. 3 of 15.) Plaintiff advances that these four pieces of newly discovered evidence provide grounds for the court to award him relief from judgment under Federal Rule of Civil Procedure 60(b). Rule 60(b) states, in pertinent part, that

> [T]he court may relieve a party . . . from a final judgment, or order . . . [due to] (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); [or] (3) fraud, . . . misrepresentation, or misconduct by an opposing party.

Fed. R. Civ. P. 60(b). "The remedy provided by Rule 60(b) is extraordinary, and special circumstances must justify granting relief under it." *Moolenaar v. Gov't of*

5

*V.I.*, 822 F.2d 1342, 1346 (3d Cir. 1987) (citing *Page v. Schweiker*, 786 F.2d 150, 158 (3d Cir. 1986) (internal quotations omitted); *Rastelli Bros., Inc. v. Neth. Ins. Co.*, 68 F. Supp. 2d 451, 454 (D.N.J. 1999); *Coltec Indus., Inc. v. Hobgood*, 184 F.R.D. 60, 63 (W.D. Pa. 1999). Indeed, the party "who seeks such extraordinary relief from a final judgment bears a heavy burden." *Pilsco v. Union R. Co.*, 379 F.2d 15, 17 (3d Cir. 1967). A motion filed pursuant to Rule 60(b) is addressed to the sound discretion of the trial court guided by accepted legal principles applied in light of all relevant circumstances. *Hooten v. Greggo & Ferrara Co.*, Civ. No. 10-cv-0776, 2013 WL 5272366, *1 (D. Del. Sept. 18, 2013) (citing *Pierce Assoc. Inc. v. Nemours Found.*, 865 F.2d 530, 548 (3d Cir. 1988)).

Rule 60(b)(2) requires that the new evidence: (1) be material and not merely cumulative; (2) could not have been discovered before trial through the exercise of reasonable diligence; and (3) would probably have changed the outcome of the trial. *Floorgraphics Inc. v. News Am. Mktg. In-Store Servs.*, 434 F. App'x 109, 111 (3d Cir. 2011) (citing *Compass Tech., Inc. v. Tseng Lab., Inc.*, 71 F.3d 1125, 1130 (3d Cir. 1995)). A party requesting such relief bears a "heavy burden," and must establish its entitlement to relief by a preponderance of the evidence. *Id.* (citing *Tseng Lab.*, 71 F.3d at 1130).

Unlike the preponderance of the evidence burden of proof required for relief under subsection(b)(2), relief pursuant to Rule 60(b)(3) requires the movant show that the opposing party engaged in fraud or other misconduct by clear and convincing evidence. *Id.*; *see also Brown v. Pa. R. Co.*, 282 F.2d 522, 627 (3d Cir. 1960). Furthermore, the moving party must establish that the purported fraud substantially interfered with the aggrieved party's ability to fully and fairly present

his case. *Floorgraphics*, 434 F. App'x at 111-12 (citing *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983)); *see also In re Lapman*, 494 B.R. 218, 223 (M.D. Pa. 2013) (citing *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281 (10th Cir. 2005)). The movant must show that the information not disclosed was "clearly material to the outcome of the litigation" or that such evidence "would have made a difference" in advancing the moving party's case. *Bandai Am. Inc. v. Bally Midway Mfg. Co.*, 775 F.2d 70, 73 (3d Cir. 1985) (holding that "[the movant's] proofs are lacking in [this] respect[]," and therefore rejecting an attempt to reopen a settlement under Rule 60(b)(3)).[1]

**III.      Discussion**

---

[1] Although Plaintiff does not rely on subsection (b)(6) in his motion, he discusses a third, "totally independent basis for relief," which he defines as "manifest injustice." (Doc. 67, p. 10 of 25 (citing *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).) Although the term "manifest injustice" does not appear in Rule 60(b)(6), it does appear in case law addressing a motion to alter or amend judgment asserted pursuant to Rule 59, which requires the motion be filed "no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(b); *see also Max's Seafood*, 176 F.3d at 677 (addressing manifest injustice as a ground for relief under Rule 59). A Rule 59 motion is clearly untimely, as judgment was entered in favor of Defendants on August 17, 2012, and the instant motion was not filed until August 16, 2013, nearly a year later.

To the extent Plaintiff attempts to assert a third "independent basis for relief" under Rule 60(b)(6), the court concludes that relief under this subsection is inappropriate, as relief under Rule 60(b) is warranted only for "extraordinary circumstances." *Bierley v. Shimek*, 153 F. App'x 87, 88-89 (3d Cir. 2005); *Moolenaar*, 822 F.2d at 1346-47 (holding that extraordinary circumstances are necessary for granting Rule 60(b) relief, and that inequities or "manifest injustice" alone do not meet the standard). Plaintiff has not presented extraordinary circumstances to justify relief. The specific grounds listed in sections (b)(1)-(5) are mutually exclusive from the broader "any other reason" language of section (b)(6). *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993). Thus, the reasons submitted in support of relief under (b)(1)-(5) cannot be the basis for relief under (b)(6). *Hechinger Liquidation Trust v. Spectrum Grp., Inc.*, 309 B.R. 706, 709 (D. Del. 2004). Here, even Plaintiff's "manifest injustice" argument boils down to the discovery of evidence that demonstrates the existence of fraud, *i.e.*, Defendant Brimmeier's alleged perjury, implicating both subsections (b)(2) and (b)(3).

To succeed on his motion, Plaintiff must establish that the newly discovered evidence was, *inter alia*, material and would probably have changed the outcome of the trial, or that Defendants' misrepresentations substantially interfered with Plaintiff's ability to fully and fairly present his case. Because materiality requires the court to consider whether the evidence would have established each element of the cause of action sufficient to warrant submitting the case to the jury, the court will set forth the requirements for a political patronage claim asserted under the First Amendment before addressing whether the Grand Jury's presentment and preliminary hearing testimony would have affected the court's disposition of Defendants' motion for summary judgment.

### A. **First Amendment Political Patronage Claim**

Jurisprudence governing political association retaliation claims under the First Amendment has its origins in the Supreme Court's "trilogy" of "political patronage cases." *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 663 (3d Cir. 2002) (citing *Elrod v. Burns*, 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980); *Rutan v. Republication Party of Ill.*, 497 U.S. 62 (1990)). From these cases and their progeny, the Third Circuit has "derived a three-part test to establish a claim of discrimination based on political patronage in violation of the First Amendment." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007). First, the plaintiff must establish that he was "employed at a public agency in a position that does not require political affiliation." *Id*. Second, the plaintiff must show that he engaged in conduct protected by the First Amendment. *Id*. Third, the plaintiff must prove that the constitutionally-protected conduct was a substantial or motivating factor for the adverse employment action. *Id*. "Implicit in the third prong is [the]

8

requirement that the plaintiff produce sufficient evidence to show the defendant knew of [the] plaintiff's political persuasion." *Wallett II*, 2013 WL 2382608 at *2 (citing *Goodman*, 293 F.3d at 664). The Third Circuit has held that an employee's claim of political discrimination must be based on "more than speculation. Otherwise, there is a danger that disputes among public officials of every nature would be characterized as 'political' affiliation in an attempt to bring the action within the First Amendment framework." *Gibbs v. Turnbull*, Civ. No. 99-cv-0061, 2008 WL 2917824, *3 (D.V.I. July 24, 2008) (citing *Liotta v. Borough of Springdale*, 985 F.2d 119, 122 (3d Cir. 1993)).

The first two prongs of the test for political affiliation retaliation were not in dispute for purposes of the court's disposition of Defendants' motion for summary judgment. *See Wallett II*, 2013 WL 2382608 at *2 n.2 ("While not expressly conceding that [Plaintiff] has satisfied the first two prongs, Defendants make no meaningful argument to the contrary. Therefore, we will assume without deciding that [Plaintiff] was employed at a public agency in a position that did not require a political affiliation and that he engaged in constitutionally protected conduct."). Thus, as stated by the Third Circuit, the central issue was "whether Defendants knew that, by refusing to participate in their pay-to-play scheme, [Plaintiff] did not support their administration." *Id*. at *2 (citing *Galli*, 290 F.3d at 275 (finding that the knowledge component is met where the defendants know that the plaintiff fails "to show public support for its officials and the political party in power")). In considering this issue, the Third Circuit held that, "[e]ven when read in the light most favorable to [Plaintiff] . . . the evidence in the record does not support

[his] assertion that Defendants were aware of his failure to support their alleged pay-to-play scheme." *Id.*[2]

### B. Application

The Grand Jury's presentment and preliminary hearing testimony of LePore, Smith, and Marrone do not present a sufficient basis for the court to provide Plaintiff relief from judgment in favor of Defendants. In support of his position that the foregoing is newly discovered evidence qualifying for relief under Rule 60(b)(2), Plaintiff argues that, "if this testimony had been available to the Plaintiff and the Court at the time of Defendants' Summary Judgment Motion, that Motion would have been obviously denied because the evidence and inferences establish the existence of the pay to play scheme by direct rather than circumstantial evidence." (Doc. 64, p. 10 of 15.) The court disagrees that this evidence entitles Plaintiff to relief under Rule 60(b)(2).

Whether there existed a pay-to-play scheme was not the dispositive issue upon which this court decided Defendants' motion for summary judgment. Indeed, implicit in both this court's and the Third Circuit's ruling was the assumption that a pay-to-play scheme existed at the Commission. *See Wallett I*, 2012 WL 3579575 at *7 ("Even if the court accepts Plaintiff's belief that the firms who were awarded the construction jobs in question were favored by either

---

[2] The basis for the Third Circuit's affirming the grant of summary judgment was narrow and well-defined. *See Wallett II*, 2013 WL 2382608 at *3 ("The inferences that may be drawn from the evidence presented by [Plaintiff], even when read in the light most favorable to him, do not sustain the conclusion that Defendants were aware of [Plaintiff]'s supposed lack of support for them."); *Id.* at *4 ("Even when read in the light most favorable to him, [Plaintiff] is unable to point to anything in the record demonstrating that Defendants were aware that he refused to cooperate with their alleged pay-to-play scheme."). Although Plaintiff can now point to the presentment to demonstrate the Defendants engaged in a pay-to-play scheme, he remains unable to demonstrate Defendants were aware of his lack of support for their administration.

10

Hatalowich or Br[i]mmeier, the court fails to see how the award of these bids was a 'substantial or motivating factor' in Plaintiff's termination."); *Wallett II*, 2013 WL 2382608 at *2 ("Even when read in the light most favorable to [Plaintiff], however, the evidence in the record does not support [his] assertion that Defendants were aware of his failure to support their alleged pay-to-play scheme."). Thus, the Grand Jury's finding that a pay-to-play scheme existed is not material to the court's disposition of Defendants' motion for summary judgment. Judgment was granted in favor of Defendants on the basis that the record was devoid of any evidence tending to support a finding that Defendants were aware of Plaintiff's political views and that this knowledge contributed to Plaintiff's termination with the Commission. *Wallett I*, 2012 WL 3579575 at *7. Because the evidence submitted by Plaintiff in support of his motion for relief from judgment does not establish the missing piece of Plaintiff's political patronage claim, he has failed to sustain the burden imposed by Rule 60(b)(2).

Plaintiff next argues that he is entitled to relief from judgment pursuant to Rule 60(b)(3) because Defendant Brimmeier "affirmatively misrepresented and withheld critical facts" when he made misrepresentations during his deposition testimony by "completely denying any political influence in the award of PTC engineering contracts as well as any direct participation in fundraising activities from these same contractors." (Doc. 64, p. 13 of 15.) Plaintiff reasons that, had Defendant Brimmeier truthfully testified at his deposition, "it would have enabled [Plaintiff] to discover enough of the true facts so as to prevail on the Summary Judgment [motion]." (*Id.*) The court disagrees that Plaintiff is entitled to relief under Rule 60(b)(3).

11

Plaintiff cannot prove by clear and convincing evidence that Defendant Brimmeier engaged in misconduct that substantially interfered with his ability to fully and fairly present his case. Despite Plaintiff's citations to numerous inconsistencies between the testimony of Defendant Brimmeier and other witnesses (*see* Doc. 67, p. 20 of 25), neither the Grand Jury's presentment nor the preliminary hearing testimony of LePore, Smith, and Marrone establish by clear and convincing evidence that Defendant Brimmeier affirmatively misrepresented and withheld critical facts. Nevertheless, even assuming the veracity of Plaintiff's accusations, Plaintiff's motion fails for a more fundamental reason, namely that there is nothing to support the conclusion that Defendant Brimmeier's misconduct substantially interfered with Plaintiff's ability to present his case. As previously stated, the court assumed, for purposes of considering the motion for summary judgment, that a pay-to-play scheme existed, which is the exact point Plaintiff alleges Defendant Brimmeier misrepresented. Thus, the alleged misrepresentations were not "clearly material to the outcome of the litigation." *See Bandai*, 775 F.2d at 73.

Plaintiff attempts to sidestep this defect by simply concluding that "[i]f Brimmeier had told the truth at his deposition, the Summary Judgment would have been denied." (Doc. 67, p. 21 of 25; Doc. 64, p. 13 of 15 ("If [Defendant] Brimmeier would have told the truth relating to how contracts were awarded, or even identified contractors referred to him by senators and their staff members . . . it would have enabled . . . [Plaintiff] to discover enough of the true facts as to prevail on the Summary Judgment.").) Unfortunately, Plaintiff fails to provide any reasoning in support of this conclusion. Moreover, to the extent Plaintiff argues he was prevented from exploring certain leads due to Defendant Brimmeier's alleged

12

misrepresentations (*see* Doc. 67, p. 10 of 25 ("Plaintiff would have had a plethora of leads to follow which would have then enabled him to develop the picture (*sans* immunity) ultimately developed by the Grand Jury by investigating specific contractor contributions if [Defendant] Brimmeier would have indicated the identity of political referrals.")), Plaintiff again fails to demonstrate how Defendant Brimmeier's alleged misrepresentations impaired his ability to present evidence on the dispositive issue, namely whether Defendants were aware of Plaintiff's political views and that this knowledge contributed to Plaintiff's termination from the Commission. Accordingly, even assuming Defendant Brimmeier's testimony was untruthful, the court does not find Plaintiff has sustained his burden under Rule 60(b)(3) because the challenged testimony was neither "material to the outcome of the litigation," *Bandai*, 775 F.2d at 73, nor prevented Plaintiff from fully and fairly presenting his case, *Stridiron*, 698 F.2d at 207.

## IV.     **Conclusion**

While the evidence submitted by Plaintiff may establish Defendants' participation in the pay-to-play scheme, it does not establish the missing element of Plaintiff's claim, the absence of which compelled the court to enter judgment in favor of Defendants on August 17, 2012. Indeed, both this court and the Third Circuit assumed the existence of and Defendants' involvement in a pay-to-play scheme for purposes of entering judgment in favor of Defendants on Plaintiff's First Amendment political patronage claim. That the Grand Jury's recommendation presents further support for the existence of the scheme does not demonstrate Defendants were aware of Plaintiff's political views and that this knowledge

contributed to Plaintiff's termination from the Commission. The mere existence of the pay-to-play scheme does not compel the conclusion Plaintiff suffered an adverse employment action because of his political affiliation. Accordingly, none of the evidence Plaintiff presents in support of his motion is material to the outcome of the litigation, and the motion for relief from judgment will be denied.

An appropriate order will issue.

                                                    s/Sylvia H. Rambo
                                                  United States District Judge

Dated: November 5, 2013.